United States District Court
Southern District of Texas
**ENTERED**
June 27, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOSE JOAQUIN SERRATO, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | CIVIL ACTION H-19-733 |
| ANTHONY BLINKEN, § | |
| in his official capacity as § | |
| Secretary of State of the United States, § | |
| § | |
| *Defendant*. § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff Jose Joaquin Serrato ("Joe Serrato") seeks a declaratory judgment that he is a United States citizen by birth. Dkt. 3 ¶ 1. On October 19, 2018, the United States Department of State revoked Joe Serrato's passport after determining that he was not a United States citizen. *Id.* at 4. The only question before the court is whether Joe Serrato was born in the United States. After a thorough review of the admissible evidence and applicable law, the court is of the opinion that Joe Serrato has carried his burden to show by a preponderance of the evidence that he is a United States citizen by virtue of his birth in Eagle Pass, Texas.

**I. FINDINGS OF FACT**

On June 15, 2022, during a trial to the bench, the court heard testimony from the following witnesses:

- Joe Serrato, the plaintiff (Trial Tr. 36:11–76:15);

- Adriana Macias-Strutt, Ph.D., the plaintiff's expert witness (*Id.* 76:16–97:19);

- Jason Thompson, special agent with the Diplomatic Security Service formerly stationed in Houston, Texas (*Id.* 98:6–123:16);

- Carmen Serrato, the plaintiff's mother (*Id.* 124:20–150:2);

- Jose B. Serrato, the plaintiff's father (*Id.* 150:17–158:11); and

- Adrienne Serrato, the plaintiff's daughter (*Id.* 158:23–165:21).

The court also considered testimony in the form of deposition designations from both parties for:

- David Corona, fraud investigator for the Department of State (Dkts. 42-8, 44); and

- Palden Schmidt, special agent with the Diplomatic Security Service formerly stationed in Houston, Texas (*Id.*).

Based on the weight of the credible evidence and testimony received, the court makes the following findings of fact:

Throughout 1965, Carmen Serrato lived in Piedras Negras, Mexico, but would legally travel to Eagle Pass, Texas, every week or two to shop and visit relatives. Trial Tr. 134:22–135:10 (Carmen Serrato); *see also* Pl's Ex. 7. On December 12, 1965, Carmen Serrato gave birth to Joe Serrato in Eagle Pass, Texas. Pl's Exs. 1–4. Carmen and Joe Serrato returned to Piedras Negras the next day. Trial Tr. 140:13–19 (Carmen Serrato). Juanita Rodriguez, a midwife in Eagle Pass, assisted with the delivery and filed a certificate of birth with the state of Texas on December 16, 2915. Pl's Exs. 1–4. Joe Serrato returned to the United States in 1968 and has lived here continuously since that time. Dkt. 42 at 5. He has a reputation among his family for being born in Eagle Pass, which is considered the family's city of origin. Trial Tr. 159:13–15, 164:8–10 (Adrienne Serrato).

## II. CONCLUSIONS OF LAW

Serrato's cause of action arises under 8 U.S.C. § 1503(a) which states in part:

2

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 against the head of such department or independent agency for a judgment declaring him to be a national of the United States.

8 U.S.C. § 1503(a). A "national of the United States" is defined as either "(A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States." *Id.* § 1101(22). The first provision is at issue in the instant case, whether Serrato is a citizen of the United States. *See* Dkt. 42.

"The Court may not grant citizenship out of equity or in the interests of justice; rather, there are 'two sources of citizenship, and two only: birth and naturalization.'" *Garcia v. Clinton*, 915 F. Supp. 2d 831, 834 (S.D. Tex. 2012) (quoting *Miller v. Albright*, 523 U.S. 420, 423, 118 S. Ct. 1428 (1998)). In a section 1503 action, the plaintiff bears the burden to "show by a preponderance of the evidence that he is a United States citizen." *Escalante v. Clinton*, 386 F. App'x 493, 496 (5th Cir. 2010) (citing *De Vargas v. Brownell*, 251 F.2d 869, 870 (5th Cir. 1958)). The court must "resolve all doubts 'in favor of the United States and against' those seeking citizenship." *See Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 395 (5th Cir. 2006) (quoting *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637, 87 S. Ct. 666 (1967)).

During a trial to the bench, Joe Serrato presented four relevant categories of evidence. First, the court heard testimony that around the time of Joe Serrato's birth Carmen Serrato was lawfully present in the United States on a weekly or biweekly basis. Trial Tr. 134:22–135:10 (Carmen Serrato). Second, Joe Serrato presented the court with a Texas birth certificate. Pl's Exs. 1–4. Third, Carmen Serrato testified that she gave birth to him in Eagle Pass, Texas.

3

Trial Tr. 126:6–13 (Carmen Serrato). Finally, the court heard testimony that Joe Serrato had a reputation for being born in the United States among his blood family. Trial Tr. 159:13–15 (Adrienne Serrato). The government did not introduce evidence that Serrato was born outside the United States but argued Serrato failed to carry his burden due to allegations of fraud relating to the Texas birth certificate and an attempted impeachment of Carmen Serrato's testimony with an alleged prior inconsistent statement.

Carmen Serrato provided unrebutted testimony that in 1965, around the time of Joe Serrato's birth, she would legally travel to Eagle Pass on a weekly or biweekly basis. Trial Tr. 134:22–135:10 (Carmen Serrato). During cross-examination, the government questioned Carmen Serrato on whether she had to surrender her border crossing card in a 1963 incident where she was detained for overstaying her three-day visa, but she credibly testified that she was given a new card either by requesting her card be returned or renewed. *Id.* 142:14–20. Documentation from the 1963 incident further supports this testimony because it indicates that her border crossing card, a Form I-186, was not lifted. Pl's Ex. 8. While of limited probative value, testimony that Carmen Serrato was regularly legally present in Eagle Pass, Texas, in 1965, is relevant circumstantial evidence that she was in Eagle Pass when Joe Serrato was born.

Far more critical evidence is Joe Serrato's Texas birth certificate. Pl's Exs. 1–4. "A birth record that is contemporaneously filed with birth is generally considered to be 'almost conclusive evidence of birth.'" *Sanchez v. Kerry*, No. 4:11-CV-02084, 2014 WL 2932275, at *4 (S.D. Tex. June 27, 2014) (Rosenthal, J.) (quoting *Liacakos v. Kennedy*, 195 F. Supp. 630, 631 (D.D.C. 1961)), *aff'd*, 648 F. App'x 386 (5th Cir. 2015). The government searched for, but did not find, a competing foreign birth certificate. Dep. Corona 34:12–14, 35:7–9. Instead, the government

4

attempted to introduce evidence that the daughter of Juanita Rodriguez alleged that Joe Serrato's birth certificate was fraudulently filed. Def's Exs. 3, 44. The plaintiff objected to these exhibits as hearsay at the pretrial conference, and the court carried the objection through trial. Trial Tr. 22:3–24. The court concludes that the document itself is admissible under Fed. R. Evid. 803(8) as a public record, but the document's contents include further hearsay—including the allegations of fraud—that do not fit within an exception. The government argued that the allegations are admissible under Fed. R. Evid 803(16) as statements within an ancient document. Trial Tr. 22:10. However, the government never laid the proper foundation at trial to authenticate this exhibit as an ancient document.[1] *See* Fed. R. Evid 901(3). Therefore, the court finds that Joe Serrato's birth certificate, untainted by any admissible evidence of fraud, is almost conclusive evidence that he was born in the United States.

Carmen Serrato also testified about the day she gave birth to her son in Eagle Pass, Texas. Trial Tr. 216:10–13, 137:19–140:16 (Carmen Serrato). While her memory was not complete regarding some collateral details, the court found her testimony to be a credible recounting of what she could remember of Joe Serrato's birth in Eagle Pass, Texas. *See id.* 143:10–145:24. However, the court heard testimony from Jason Thomson that during an investigation in 2017, Carmen

---

[1] Had the government successfully laid the foundation to admit the allegations of Juanita Rodriguez's daughter as statements in an ancient document, the court's conclusion regarding the legitimacy of the birth certificate would not change. Joe Serrato introduced evidence that on December 22, 2017, the State of Texas refused to issue a certified copy of his birth certificate due to the same allegations of fraud. *See* Pl's Ex. 37. After Joe Serrato requested a hearing on the issue, the State of Texas conducted "a thorough review of the evidence" and "decided to remove the addendum [containing the fraud allegations] from Mr. Serrato's birth certificate." Pl's Ex. 39. Administrative Law Judge A. Shawn Richards dismissed the case, and the State of Texas issued Joe Serrato a certified copy of his birth certificate. Pl's Exs. 4, 40. This proceeding is dispositive on whether the birth certificate is legitimate, and the court gives full faith and credit to Joe Serrato's birth certificate as reissued by the State of Texas.

Serrato stated that both her sons were born in Mexico. Trial Tr. 102:21–23, 115:21–117:25. The court admitted this statement over the plaintiff's hearsay objection for the purposes of impeachment only and will not consider this alleged statement for the truth of the matter asserted. *Id.* 115:23–116:19; *see also* Fed. R. Evid. 613, 802.

After considering the in-court testimony and deposition designations, the court cannot conclude that Carmen Serrato made the alleged inconsistent statement. Jason Thompson and Palden Schmidt were the two special agents in the room with Carmen Serrato at the time of the alleged inconsistent statement. Trial Tr. 101:14–103:17 (Jason Thompson); Dep. Schmidt 41:23–43:5. The interview took place entirely in Spanish, and Schmidt did not know Spanish. Trial Tr. 108:18–109:13 (Jason Thompson); Dep. Schmidt 44:4–46:6. Special agent Thompson conducted the interview and translated for special agent Schmidt but admits that he did not have a Spanish proficiency exam score at the time. *Id.*; Trial Tr. 104:1–15 (Jason Thompson). No recording was made of the alleged statement. Trial Tr. 111:2–18 (Jason Thompson); Dep. Schmidt 55:18–23. Carmen Serrato refused to provide a written statement to memorialize the alleged statement. Trial Tr. 118:8–17 (Jason Thompson). Carmen Serrato denies making the alleged statement. Trial Tr. 133:12–18 (Carmen Serrato).

Jose B. Serrato was present during the interview and testified that he corrected special agent Thomson at one point on his understanding of what Carmen Serrato had said and that the agents threatened to arrest him as a result. Trial Tr. 155:21–156:5 (Jose B. Serrato). Special agent Schmidt described the same interaction without knowledge of what was being said in Spanish. Dep. Schmidt 61:12–62:1, 62:25–64:9. After considering the credibility of the witnesses, all of whom the court deems to have testified honestly about their recollections, the court finds that

special agent Thompson misunderstood what Carmen Serrato said on that day, and she did not actually contradict her testimony that Joe Serrato was born in Eagle Pass, Texas.[2]

Finally, the court heard testimony from Joe Serrato's daughter that he has a reputation among his family for being born in Eagle Pass, Texas, which is considered to be the family's city of origin. Trial Tr. 159:13–15, 164:8–10 (Adrienne Serrato). This evidence is admissible despite being hearsay as reputation concerning personal history. *See* Fed. R. Evid. 803(19). The court concludes this evidence, like the circumstantial evidence described above, is relevant to the issue before the court but of little probative value.

After considering all the admissible evidence, the court concludes that Joe Serrato has met his burden to show by a preponderance of the evidence that he is a United States citizen by birth in Eagle Pass, Texas.

### III. CONCLUSION

For the reasons given above, plaintiff Jose Joaquin Serrato has shown by a preponderance of the evidence that he is a United States citizen by birth. He is entitled to his passport. The court will issue a final declaratory judgment by separate order.

Signed at Houston, Texas on June 27, 2022.

_____
Gray H. Miller
Senior United States District Judge

---

[2] To the extent that any doubt remains about what happened in that interview, the court must resolve that doubt in favor of the United States. *See Bustamante-Barrera*, 447 F.3d at 395. However, even giving the government their best case, where the testimony of Carmen Serrato is disregarded in its entirety, Joe Serrato would nevertheless carry his burden to show he was born in the United States by a preponderance of the evidence because of the unrebutted Texas birth certificate supported by the admissible testimony offered at trial.